IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

v. Case No. 25-cr-00109-wmc

JADE MCCLAREN,

Defendant.

---

GOVERNMENT'S SENTENCING MEMORANDUM

---

McClaren purchased a 9mm handgun for a Jamaican national who two days later used it to commit a homicide. People who buy guns for those who are not legally able to do so pose a tremendous risk to society – here with tragic results. McClaren's straw purchase resulted in the worst possible outcome, and this Court should sentence her to a period of imprisonment to hold her accountable and as deterrence to others.

**1. Nature and Circumstances of the Offense**

On July 2, 2025, McClaren purchased a Taurus G3C 9mm handgun from a Federal Firearms Licensee (FFL) gun store. R. 47 "PSR," ¶15. McClaren filled out the required Form 4473 paperwork and indicated that she was the actual transferee/buyer of the firearm. *Id*. Video from the gun store showed McClaren making the purchase while accompanied by Tyreek Foster. *Id*. Subsequent investigation determined that McClaren and Foster were working together to purchase the firearm for Brandon Bent.

On July 4, 2025, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

assisted the Lake Delton Police Department in a homicide investigation. R. 47 "PSR," ¶ 10. Brandon Bent was charged with first-degree intentional homicide for shooting the victim with what is believed to be the gun that McClaren purchased[1]. *Id*. At the scene investigators found an empty box for a Taurus GC3 9mm handgun along with 9mm ammunition. *Id*. The serial number on the box allowed investigators to determine that McClaren had purchased the firearm.

On July 6, 2025, McClaren told police that Bent called her in a panic, and that she interpreted through the phone call that Bent had shot someone. *Id*., ¶ 13.

McClaren spoke with ATF agents on July 15, 2025, and admitted that she purchased the gun for Bent. *Id*., ¶ 16. McClaren said that Bent showed her what kind of gun he wanted and then gave Foster the money. *Id*. McClaren knew that Bent was not able to legally purchase a gun[2]. *Id*. McClaren worked with Bent and knew that he needed to get a permanent resident card before he could legally purchase a firearm. *Id*., ¶ 16. McClaren went to a gun store with Foster to purchase the gun, and Foster brought money that he got from Bent. *Id*. After McClaren purchased the gun, she gave it to Foster knowing that he would deliver it to Bent. *Id*. Investigators were able to recover a text message conversation between McClaren and Foster arranging the gun purchase. *Id*., ¶ 21. They also recovered texts that McClaren sent the day after the homicide; when the other person asked McClaren if they were wrong about Bent committing the

[1] The Taurus G3C was never recovered, and it is believed Bent disposed of the murder weapon.
[2] Bent and Foster were both Jamaican nations in the United States on non-immigrant visas. *Id*., ¶ 11.

homicide, McClaren responded, "Nope. Brandon cold blooded killer her. There were people trying to kill him also. …he planned on killing someone that day. He called me as soon as he killed her." *Id*.

This was not the only firearm that McClaren purchased for another. On July 3, 2025, McClaren ordered a Ruger 9mm handgun which was delivered to the FFL and intended to be given to Foster. *Id*., ¶ 12. On July 6, 2025 – after the significant law enforcement response to the homicide – Foster was worried and emailed the FFL to cancel the transaction. *Id*.

**2. The History and Characteristics of the Defendant**

McClaren is 42 years old and has convictions for County Disorderly Conduct (2008) and Issuing Worthless Checks (2014). *Id*., ¶¶ 44-45. The lack of any significant criminal history is typical of straw purchasers. If they had a felony record, they would be prohibited from purchasing firearms.

The defense argues that McClaren was manipulated into committing this crime, and that circumstances in her life should lead to a sentence of probation. But the evidence demonstrates that this was not just a one-time purchase. McClaren was buying or arranging to buy firearms for Foster, Bent, and one other person. McClaren appears to have had sufficient information about Bent to know that he was a significant risk with a firearm.

McClaren was not coerced into a one-time gun purchase. She was engaged in a

pattern[3] of this behavior during the time period of the murder, and was providing guns to multiple people.

If these straw purchases had been discovered before the tragic murder, the government would be asserting that – given the known facts surrounding these purchases – a potentially horrific outcome had been averted. Instead, this case demonstrates the absolute worst-case risk of straw purchases – that a gun purchased for another was used to kill.

**3. The Need for the Sentence Imposed**

McClaren had every opportunity to conform to the law but did not. When she filled out the form 4473 she lied and ignored the warnings of potential penalties. Because of that, she must be sentenced to a period of imprisonment to hold her accountable. The sentence should also act as a deterrent to others who may be considering straw purchasing firearms. A sentence of probation would unduly depreciate the severity of the offense in this case.

---

[3] McClaren purchased the handgun for Bent, had order another one for Foster, and she purchased a third handgun for a witness in or around June of 2025 (PSR, ¶ 19).

**4. Conclusion**

For these reasons, the government respectfully recommends that a period of incarceration within the guideline range is appropriate in this case.

Dated this 21st day of August 2026.

Respectfully submitted,

CHADWICK M. ELGERSMA
United States Attorney

By: /s/
COREY C. STEPHAN
Assistant United States Attorney